**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
----------------------------------x
NATIONAL GRANGE MUTUAL INSURANCE   :
COMPANY, INC.,                     :
                                   :
Plaintiff/Counterclaim Defendant,  :
                                   :
v.                                 : Civil No. 3:08CV981(AWT)
                                   :
JUDSON CONSTRUCTION, INC., NATHAN  :
JUDSON, PATRIC MURRAY, PETER       :
OLIVER, and THE ESTATE OF CRYSTAL  :
SLATER,                            :
                                   :
Defendants/Counterclaim Plaintiff. :
----------------------------------x
```

<u>**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**</u>

Plaintiff/counterclaim defendant National Grange Mutual Insurance Company, Inc. ("National Grange"), and defendants Judson Construction, Inc., Nathan Judson and Patric Murray and defendant/counterclaim plaintiff The Estate of Crystal Slater have filed cross motions for summary judgment. For the reasons set for below, the plaintiff's motion for summary judgment is being denied, and the motion for summary judgment filed by the defendants/counterclaim plaintiff is being granted in part and denied in part.

**I.   FACTUAL BACKGROUND**

National Grange Mutual Insurance Company, Inc. ("National Grange") is an insurance company organized under the laws of the State of Florida. In April 2005, National Grange issued a

Contractors Omnibus General Liability Policy (the "2005 Policy")
to Nathan Judson d/b/a Judson Construction.  At the time, Nathan
Judson was doing business as Judson Construction with a
principal place of business located in Millerton, New York.  The
2005 Policy had liability limits of $1,000,000 for each
occurrence and a policy term of one year, from April 18, 2005 to
April 18, 2006.

For purposes of the policy, Judson Construction was
classified as Carpentry NOC, which stands for "Carpentry not
otherwise classified."  The classification "Carpentry NOC"
includes carpentry of a commercial or industrial nature as well
as carpentry on structures greater than three stories in height
and incidental roofing work.  National Grange's underwriting
guidelines provide illustrations of what might be considered
"incidental" roofing work.  In a section entitled "Roofing
Exposure," the guidelines state:

> It is not unusual for our typical carpentry contractor to
> be involved with incidental roofing work over a period of
> time.  This is most likely to occur as part of a remodeling
> or small addition job but may be a re-roofing job not
> associated with other work for that customer...We do not
> want to write insureds that do roofing as described above
> if it is more than incidental to their operation.
> Incidental is defined as 1-2 roofs per year for a one or
> two-man operation and 3-5 roofs per year for a three to
> five-man operation.  It is referred to in number of roofs
> per year since that is the easiest way to quantify the
> amount of work, but [this] could also equate to
> approximately 5-10% of annual receipts.... Risks that do
> more roofing than this must be classed and rated as roofers

and as such are not acceptable as part of our Main Street America market.

(Defs.' Local Rule 56(a)(1) Statement ("Defs.' 56(a)(1)"), Ex. 8, Doc. No. 91.)

In 2006, the policy was renewed (the "2006 Policy") with a policy term of April 18, 2006 to April 18, 2007.  On January 1, 2007, Nathan Judson incorporated his business, forming Judson Construction, Inc., which also had its principal place of business in Millerton, New York.  On April 18, 2007, the policy was renewed again (the "2007 Policy"), with a policy term extending from April 18, 2007 to April 18, 2008.

The 2007 Policy contained the following provision in the section, "Businessowners Common Policy Conditions":

> C.   Concealment, Misrepresentation or Fraud
>
> This policy is void in any case of fraud by you as it relates to this policy at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> 1.   This policy;
> 2.   The Covered Property;
> 3.   Your interest in the Covered Property; or
> 4.   A claim under this policy.

(Defs.' 56(a)(1), Ex. 19, NG-39.)  The above provision of the 2007 Policy was amended by the following endorsement, entitled "New York Changes - Fraud":

> The CONCEALMENT, MISREPRESENTATION OR FRAUD Condition is replaced by the following:
>
> FRAUD

-3-

> We do not provide coverage for any insured ("insured") who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss ("loss") or damage for which coverage is sought under this policy.

(Id. at NG-45.)

Part of the Commercial Insurance Application Nathan Judson submitted in April 2005 included a form called a Contractor Supplement. The Contractor Supplement contained various questions related to, inter alia, Judson's general exposure to liability. Judson was asked, "Does the applicant do any roofing or re-roofing? If yes, how many in the past year?" (Defs.' 56(a)(1), Ex. 3, NG-348.) Judson answered the first question, "no" and thus did not provide a number of roofing jobs Judson Construction had performed in the prior year.

On July 2, 2007, Crystal L. Slater ("Slater") suffered a fatal injury while working for Judson Construction, Inc. at a job site. On August 16, 2007, an employee in National Grange's Claim Department prepared a Report on Risk Characteristics regarding the incident, which recited that Slater was a 17 year-old female summer employee who fell off a three-story roof and died nine days later. It also stated that the insured was doing roofing work at the time. The report concluded that the incident entailed a risk by the insured that appeared to be

misclassified, that the insured engaged in unsafe practices and that the insured employed minors.

The Report on Risk Characteristics was sent to National Grange's Underwriting Department on August 17, 2007.  National Grange underwriter Tom Green reviewed the report, conferred with another underwriter, David Hall, and took the following action: "Discussed this with the agent and I will be cancelling mid term for an increase in hazard.  The contractors supplemental in file indicated that the insured did not do any roofing work.  Dave Hall and I discussed prior to me calling the agent.  I also discussed with Stacy and It appears we will be denying the claim."  (Defs.' 56(a)(1), Ex. 23.)

On the Underwriting Department Processing Route Slip generated after the incident, Green notes, "Please cancel MP....  A material change in the nature or extent of the risk which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was last renewed."  (Defs.' 56(a)(1), Ex. 24.)  The form provided for several forms of notice that could be sent to the insured, including a termination notice and a cancellation notice.  Green checked the box indicating that a cancellation notice was to be sent.

On August 22, 2007, National Grange mailed a written notice of policy cancellation, effective September 14, 2007.  This

-5-

cancellation notice stated that the policy was being cancelled because: "Type of operations unacceptable to company.  A material change in the nature or extent of the risk which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was last renewed."  (Defs.' 56(a)(1), Ex. 25.)  It is undisputed that this letter reflects that in August 2007, National Grange elected to cancel rather than rescind the 2007 Policy.

In response to the fatal injuries sustained by Slater, on or about April 1, 2008, The Estate of Crystal Slater (the "Estate") instituted a wrongful death action against Judson Construction, Inc., Nathan Judson and Patric Murray (the "Judson Defendants"), and the owner of the home where Slater was fatally injured, Peter Oliver.  National Grange defended the wrongful death action under a reservation of rights.

On June 30, 2008, National Grange instituted this action seeking a declaratory judgment that (1) under the policy it had no duty to indemnify or defend the Judson Defendants because of an exclusion in the policy for bodily injury to "employees" of the insured; (2) Nathan Judson and Patric Murray are not insureds under the policy because they are "executive officers" of Judson Construction, Inc.; (3) coverage is excluded under the policy because the Judson Defendants committed illegal and/or intentional acts; and (4) punitive damages are excluded from

-6-

coverage under the policy.  On June 12, 2009, National Grange moved in the declaratory action for summary judgment on the First and Fourth Counts of the Complaint, namely its claims that Slater was an "employee" under the policy and therefore excluded from coverage under the policy, and that punitive damages are excluded from coverage under the policy.

On July 28, 2009, the Judson Defendants and the Estate reached a settlement in the wrongful death action.  The terms of the settlement agreement provided that a stipulated judgment would enter against only Judson Construction, Inc. and in the amount of $1,000,000, and that the Judson Defendants would assign their rights under the policy with National Grange to the Estate.  The Estate, in turn, agreed that it would only pursue National Grange to satisfy the judgment against Judson Construction, Inc.  The preamble to the settlement agreement reads:

> WHEREAS, each and all parties are aware that there exists a dispute between the defendants and their insurance company National Grange Mutual Insurance Company ("National Grange"), relating to an insurance policy issued to Judson Construction, Inc. including, without limitation a certain business owner's insurance policy bearing number MPV49430;
>
> WHEREAS, the Estate has had full and adequate opportunity to review the Defendants' potential claims against National Grange and the underlying facts on which those claims are based as well as the claims made by National Grange in an action pending in the United States District Court, District of Connecticut, bearing Civil Action No.: 08-CV-981 (AWT);...

(Defs.' 56(a)(1), Ex. 21, Ex. A, 3.)  On January 22, 2010,
judgment entered against Judson Construction, Inc. in the amount
of $1,000,000 in the wrongful death action.

On March 31, 2010, National Grange's motion for summary
judgment was denied.  Summary judgment was denied as to the
First Count of the Complaint, i.e., as to whether Slater was an
"employee," and denied as moot as to the Fourth Count as there
were no punitive damages awarded in the judgment entered against
Judson Construction, Inc.

On May 10, 2010, National Grange responded to a letter from
the Estate demanding payment of the judgment entered against
Judson Construction, Inc.  The letter stated that National
Grange's position with regard to the demand is that:

> There is no judgment against National Grange and, in
> fact, there has only been a denial of its motion for
> summary judgment in its claim for declaratory relief.
> Even more important, National Grange believes it has a
> viable defense to any claim on behalf of Judson
> Construction, Inc. based on the material misrepresentations
> made when it applied for the insurance policy.  The
> application indicated that Judson Construction does not do
> roofing jobs and had not done so in the past.  We believe
> there is evidence to the contrary.  Such material
> misrepresentation would void the obligations of National
> Grange under the policy.

(Defs.' 56(a)(1), Ex. 30.)  On September 1, 2010, the Estate
filed the Counterclaim in this action.  It asserted four claims
against National Grange: a claim for breach of the terms of the
policy, brought pursuant to the assignment of rights and claims

by Judson Construction, Inc. to the Estate (First Count); a
claim for breach of the terms of the policy, brought as a
subrogee of Judson Construction, Inc. (Second Count); a claim
for breach of the covenant of good faith and fair dealing (Third
Count); and a claim for a declaration of liability with respect
to the judgment in the wrongful death action plus post-judgment
interest under New York law (Fourth Count).  On October 12,
2010, National Grange filed an answer and affirmative defenses
to the Counterclaim, asserting, among other affirmative
defenses, that "[t]he plaintiff is not obligated to perform
under the subject insurance contract as it was rendered void ab
initio as a result of the defendants' material
misrepresentation(s)."  (Answer to Countercl. 6, Doc. No. 67.)

    National Grange moves for summary judgment on the
Counterclaim, seeking a declaration that the policy was rendered
void ab initio by the Judson Defendants' material
misrepresentations in obtaining the original policy and
subsequent renewals.

    The Estate and the Judson Defendants also move for summary
judgment, arguing that (1) National Grange is precluded from
claiming the 2007 Policy is void ab initio because in September
2007 it elected to cancel the 2007 Policy rather than rescind
it; (2) an endorsement to the 2007 Policy precludes National
Grange from belatedly asserting a defense of material

-9-

misrepresentation in the Application for Commercial Insurance in April 2005; and (3) no representations were made to National Grange by or on behalf of Judson Construction, Inc. when National Grange issued the 2007 Policy in April 2007.

## II.   LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(a) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined...to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine...if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  When confronted with an asserted factual dispute, the

court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and...draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990) (internal quotation marks omitted)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could

reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts,...[and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

## III. DISCUSSION

### A.   Right to Rescind Due to a Material Misrepresentation

National Grange moves for summary judgment on all counts in the Counterclaim, brought by the Estate, based on National Grange's affirmative defense of material misrepresentation. National Grange contends it has no obligation to indemnify the

-13-

Judson Defendants under the policy because the policy was void ab initio as the result of a material misrepresentation by the defendants and/or their agents.  The Estate and the Judson Defendants move for summary judgment arguing, inter alia, that National Grange waived the right to rescind the policy and that, in any event, National Grange is barred by the doctrine of equitable estoppel from relying on an alleged material misrepresentation as a basis for rescinding the policy or for an affirmative defense.  The court agrees with the Estate and the Judson Defendants both as to waiver and equitable estoppel.[1]

### 1.   Waiver

The defendants contend that National Grange waived its right to rescind the 2007 Policy as void ab initio because it elected to cancel rather than rescind the policy in September 2007.  Based on the facts here, the court agrees.

"The cancellation of an insurance policy should...be distinguished from the concept of rescission by the insurer.  A rescission avoids the contract ab initio, while cancellation merely terminates the policy prospectively, as of the time the cancellation became effective."  Richard A. Lord, Williston on

---

[1] Thus, the court does not reach their arguments that an endorsement to the 2007 Policy precluded National Grange from asserting a defense of concealment, misrepresentation or fraud, and that no representations were made to National Grange by or on behalf of Judson Construction, Inc. when National Grange issued the 2007 Policy.

<u>Contracts</u> § 49:129 (4th ed. May 2011).  The defendants argue
that National Grange's decision on August 22, 2007 to cancel the
policy, effective September 14, 2007, precludes it from raising
rescission as an affirmative defense to the Counterclaim.

The question of whether and, if so, when the cancellation
of an insurance policy waives the insurer's right to later
rescind that policy has been addressed in a series of four cases
applying or interpreting New York law.  First, in <u>Stein v.</u>
<u>Security Mutual Ins. Co.</u>, 832 N.Y.S.2d 679 (N.Y. App. Div. 1st
Dep't 2007), an insurance company became aware of a
misrepresentation and elected to cancel, rather than rescind,
the insurance policy because of it.  During the 30-day period
between the notice of cancellation and the effective date of the
cancellation, a loss occurred, and the insurer attempted to
rescind the policy as void ab initio based upon the same
misrepresentation that prompted the insurer to cancel the policy
initially.  The court held that, "[a]s defendant elected to
cancel plaintiffs' policy rather than rescind it, the policy was
in full force until the cancellation notice's stated effective
date," and the insurer could not later attempt to rescind.  <u>Id.</u>
at 681.

In <u>Fidelity & Guar. Ins. Underwriters, Inc. v. Jasam Realty</u>
<u>Corp.</u>, the Second Circuit was presented with a question similar
to that presented in <u>Stein</u>: "whether Fidelity waived its right

-15-

to rescind the insurance policy based on material misrepresentations...by cancelling the policy pursuant to the policy's terms without any reservation of its right of rescission." 540 F.3d 113, 143 (2d Cir. 2008). There, the insurer sent notice of cancellation under New York law to the insured after it became apparent that the insured had made material misrepresentations about its intended use of a parcel of land insured under the policy. In considering whether the insurer's cancellation of the policy without reservation of the right to rescind precluded the insurer from later rescinding the policy, the court stated:

> We think it unwise to grant judgment as a matter of law to a party where, as here, the law is unclear and the issue may ultimately become moot after remand. The resolution of [this question] of law may, moreover, have significant consequences for insurers that have selected New York law to govern their policies.

Id. at 144. The Second Circuit noted that it has the ability to certify questions of law to the New York Court of Appeals but observed that "[a]ny certification in this case would, however, be premature" as the case could yet be decided on other grounds. Id. The court then remanded the case for retrial because of an unrelated error. With respect to the issue of the insurer's knowledge at the time of cancellation, the court noted that "[t]he facts underlying this issue, however, were not developed at trial. The defendants point to no evidence in the record,

-16-

for example, that indicates when Fidelity learned of facts which would have allowed for rescission of the policy." Id. at 145.

The language used in Stein was ambiguous as to whether there was a rule under New York law that once an insurer sends a notice of cancellation, it can never thereafter rescind the policy, or rather, Stein merely stood for the proposition that under the circumstances presented there an insurer could not subsequently rescind the policy. Two New York cases decided after Fidelity have clarified that an insurer which has previously canceled a policy because of a misrepresentation has waived the right to rescind the policy if the insurer was aware, at the time of the cancellation, of the misrepresentation that would have allowed it to rescind the policy.

In Olympia Mortg. Corp. v. Certain Underwriters at Lloyd's, 2009 N.Y. Slip Op. 32623U, 2009 N.Y. Misc. LEXIS 5027 (Oct. 29, 2009), the court reviewed the facts and the holding in Stein and then denied the insurer's motion for summary judgment, stating:

> Here, the Insurers terminated or canceled the Bond in December 2004, effective January 2005. Despite their earlier cancellation, they are now seeking to rescind the Bond as if it never existed. These two actions are inconsistent with each other. At issue is how much the Insurers knew about Olympia's fraud when they canceled the Bond. At that time, Olympia already had been shut down, its mortgage banking license had been surrendered, the Receiver had been appointed, and the complaint laying out the refinancing fraud in detail had been filed in the Fannie Mae Action. Moreover, the haste with which the Insurers canceled the Bond without affording Olympia the full 60-day prior notice required under the termination

> condition of the Bond leaves the court to wonder about the extent of information which the Insurers possessed or to which they were privy.  This is an additional reason for denying summary judgment to the Insurers.

Id. at *18-19.

Also, in Sec. Mut. Ins. Co. v. Perkins, 2011 N.Y. Slip Op. 5848, 927 N.Y.S.2d 189, 2011 N.Y. Ap. Div. LEXIS 5692 (July 7, 2011), the court concluded that "[o]ur decision in Stein v. Security Mut. Ins. Co. does not preclude an insurer from rescinding an insurance policy, if, after canceling the policy following a loss, it later learns that the insured materially misrepresented facts in the insurance application." Id. at *2 (internal citation omitted)).

Thus, under New York law, where an insurer has knowledge of a misrepresentation that constitutes a basis for rescission of the policy but elects instead to cancel that policy, the insurer has waived its right to thereafter rescind the policy, at least to the extent rescission would be based on the same misrepresentation.  Conversely, where an insurer cancels a policy and has not learned of facts that give it the right to rescind the policy, the insurer has not waived its right to rescind the policy.  There are situations that these two principles do not address, but these principles are sufficient to address the circumstances presented in the instant case.

Here, Nathan Judson submitted a Contractor Supplement form with the Commercial Insurance Application in April 2005.  This form indicated that Judson Construction did not do roofing jobs. Slater's accident in July 2007 involved her falling off the roof of a home on which Judson Construction, Inc. was performing a roofing job.  National Grange's internal Report on Risk Characteristics stated that National Grange "will be cancelling mid term for an increase in hazard" and to justify that decision it relied on the fact that "[t]he contractors supplemental in file indicated that the insured did not do any roofing work." (Defs.' 56(a)(1), Ex. 23.)  National Grange was thus in possession of evidence reflecting the alleged material misrepresentation, and its own internal documents reflect that the misrepresentation was at least part of the basis for the decision to cancel the policy.  There is no genuine issue as to the fact that National Grange was aware of the alleged material misrepresentation at the time it made the decision to cancel the policy.

Based on the foregoing, the court concludes that National Grange waived its right to rescind because it chose to cancel the policy with full knowledge of the alleged material misrepresentation that would have allowed it to rescind the policy as void ab initio.  Thus, the defendants are entitled to summary judgment on the issue of whether the policy was rendered

void ab initio as a result of a material misrepresentation by
the defendants and/or their agents, based on the waiver by
National Grange of its right to rescind the policy.

### 2.   Equitable Estoppel

The defendants contend that, in any event, National Grange
is barred by the doctrine of equitable estoppel from rescinding
the policy based on an alleged material misrepresentation, and
similarly barred from relying on a material misrepresentation as
the basis for an affirmative defense.   The court agrees.

"New York law is crystal clear on this point--when an
insurer seeks to rescind a contract ab initio based on
misrepresentations by the insured, it must promptly disaffirm
the contract upon learning of the misrepresentations--and
certainly it may not continue to derive benefit under it."[4]
GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim,
593 F. Supp. 2d 471, 483 (E.D.N.Y. 2009) (citing Sumitomo Marine
& Fire Ins. Co. v. Cologne Reinsurance Col. Of America, 75
N.Y.2d 295 (1990)).   The Second Circuit as well has

---

[4] In the previous Ruling on Motion for Summary Judgment (Doc. No.
53), this court held that New York law governs the policy.   The
plaintiff now argues, however, that Nathan Judson filed a false
affidavit indicating that most of his work was performed in the
state of New York when in fact none of it had been.   Even if
this were true, that statement by Judson was but one factor on
which the court based its conclusion that New York law is the
proper law to apply in this case.   (See Ruling Mot. Summ. J.,
14-15.)   The court's conclusion would remain unchanged in light
of the other factors militating in favor of applying New York
law.

"categorically stated that 'any action for rescission must be initiated without unreasonable delay.'" <u>Ballow, Brasted, O'Brien & Rustin, P.C. v. Logan</u>, 435 F.3d 235, 240 (2d Cir. 2006) (quoting <u>Allen v. WestPoint-Pepperell, Inc.</u>, 945 F.2d 40, 47 (2d Cir. 1991)); <u>see also</u> <u>Guberman v. William Penn Life Ins. Co. of New York</u>, 538 N.Y.S.2d 571, 572 (N.Y. App. Div. 2d Dep't 1989) ("[I]n New York, as well as most other states, the general rule is that an insurer which denies liability on a specified ground may not thereafter shift the basis for its disclaimer to another ground known to it at the time of its original repudiation.").[5]

In <u>GuideOne</u> the insurer did not seek to rescind the contract for seven months after it became aware of a material misrepresentation.  In response to this delay, the court observed that "[w]ith respect to GuideOne's right to rescind, only Rip Van Winkle slept longer.  Such delay is unreasonable as a matter of law." <u>GuideOne</u>, 593 F. Supp. 2d at 484; <u>see also</u> <u>Saitta v. New York City Transit Auth.</u>, 866 N.Y.S.2d 62, 63 (N.Y. App. Div. 1st Dep't 2008) (four month delay after learning of misrepresentation was unreasonable as a matter of law).

---

[5] The court notes that the Second Circuit declined to follow <u>Guberman</u> to the extent that <u>Guberman</u> also required a showing of prejudice on the issue of waiver.  <u>See</u> <u>State of N.Y. v. AMRO Realty Corp.</u>, 936 F.2d 1420, 1432 n.12 (2d Cir. 1991).

Here, on August 22, 2007, National Grange sent notice of cancellation of the policy.  It first gave notice of its intention to rescind the policy in its May 10, 2010 letter.  The delay by National Grange was unreasonable.

However, estoppel requires a two-part inquiry.[6]  "New York courts have required insureds seeking to estop their insurer from rescinding insurance policies to demonstrate not only an unreasonable delay but also prejudice resulting from that delay."  GuideOne, 593 F. Supp. 2d at 484; see also Precision Auto Accessories, Inc. v. Utica First Ins. Co., 859 N.Y.S.2d 799 (N.Y. App. Div. 4th Dep't 2008); Legum v. Allstate Ins., 821 N.Y.S.2d 895 (N.Y. App. Div. 2d Dep't 2006).  "If the plaintiff 'unreasonably delays' under circumstances suggesting that he intends not to pursue a claim and the defendant relies on this appearance to his detriment, all the elements of ordinary estoppel are present."  1 Dobbs, Law of Remedies § 2.4(4) (2d

---

[6] The Estate in its reply argues that National Grange, by cancelling the policy effective 30 days from the issuance of the notice, continued to receive premiums for that 30-day period, thus resulting in clear prejudice to the defendant.  See, e.g., Fidelity, 540 F.3d at 144 ("It is well settled that the continued acceptance of premiums by the carrier after learning of facts which allow for rescission of the policy, constitutes a waiver of, or more properly an estoppel against, the right to rescind.") (internal quotation marks omitted).  This argument is unpersuasive here, however, as the terms of the policy require the insurer to provide written notice of cancellation "30 days before the effective date of cancellation" in the event of "[d]iscovery of fraud or material misrepresentation in obtaining the policy or in making a claim."  (Defs.' 56(a)(1), Ex. 19, NG 47-78.)

-22-

Ed. 1993).  "To show prejudice, the insured must show reliance
and a change in position resulting from the delay."  Mutual
Benefit Life Ins. Co. v. Lindenman, 911 F. Supp. 619, 627
(E.D.N.Y. 1995) (quoting William Crawford, Inc. v. Travelers
Ins. Co., 838 F. Supp. 157, 160 (S.D.N.Y. 1993), aff'd, 23 F.3d
66 (2d Cir. 1994)).  "Where no prejudice exists the insurer is
not estopped from denying benefits as a matter of law."  Id.
(citing 69 N.Y. Jur. 2d Insurance § 1285 (1988)).  "Whether the
degree of prejudice allegedly suffered by the insured warrants
estoppel is generally a question of fact."  GuideOne, 593 F.
Supp. 2d at 484 (citing Guberman, 538 N.Y.S.2d at 573)).

        In GuideOne, the defendant claimed it was prejudiced
"because GuideOne's tardy disclaimer prevented it from procuring
substitute coverage that would have otherwise covered it during
this period."  Id. at 484.  The court rejected this argument,
reasoning that "if defendants assert that they were prevented
from securing coverage for the period preceding expiration of
the policy...then they merely reiterate the generalized
'prejudice' that any insured would suffer if proven to have made
material misrepresentations during the application process."
Id.

        Here, there is no genuine issue of material fact as to
whether the Estate has suffered substantial prejudice, given the
terms of the settlement agreement between the Estate and the

Judson Defendants and the evolution of this case.  The Estate
commenced its wrongful death action against the Judson
Defendants in April 2008.  National Grange defended the suit
under a reservation of rights.  On June 30, 2008, National
Grange filed the Complaint seeking a declaration that it had no
duty to defend or indemnify the Judson Defendants in the
wrongful death action.  National Grange alleged in this action
that it had a right to such a declaration because certain policy
exclusions precluded coverage for the occurrence at issue, not
mentioning in the Complaint, or anywhere else, that there had
been any alleged material misrepresentation or that the policy
might be void ab initio.  National Grange moved for summary
judgment on the ground that certain policy exclusions precluded
coverage for the occurrence.  It was not until after National
Grange was denied summary judgment on Count One of the Complaint
that it informed the defendants of its contention that a
material misrepresentation rendered the policy void from
inception.

     Prior to being informed that National Grange would seek to
assert as a defense that there had been a material
misrepresentation made by Nathan Judson when he applied for the
policy and that the policy was therefore void ab initio, the
Estate settled with the Judson Defendants, and in accordance
with the settlement agreement, the Judson Defendants assigned

-24-

their rights under the policy to the Estate.  The preamble to the settlement agreement reflected that both sides were aware of the dispute between the Judson Defendants and National Grange as to whether there was coverage under the policy.  It also reflects that the Estate had had full and adequate opportunity to review the facts underlying the dispute, as well as the claims made by National Grange in this action.

The "claims made by National Grange" which the Estate had "full and adequate opportunity to review" were National Grange's contention that it was not responsible to defend or indemnify because certain policy exclusions precluded coverage for the occurrence, and included no claim based upon an argument that there had been a material misrepresentation in connection with the application for the policy and no claim that the policy was void ab initio.  The Estate gave up all rights to pursue the Judson Defendants based on this understanding.

Based on the foregoing, the court concludes that there is no genuine issue as to the fact that National Grange unreasonably delayed giving notice that it intended to rescind the policy, as well as notice that it was relying on an alleged material misrepresentation to deny coverage under the policy, and that the Estate suffered substantial prejudice as a result of that unreasonable delay.  Thus, the defendants are entitled to summary judgment, based on the doctrine of equitable

-25-

estoppel, on the issue of whether National Grange is barred from rescinding the policy as void ab initio, and also barred from asserting an affirmative defense based on an alleged material misrepresentation.

**B.   Second Count of National Grange's Complaint**

The defendants argue that the Second Count of the Complaint is moot because the Estate is only seeking to recover on the judgment entered against Judson Construction, Inc. and all claims by the Estate against Nathan Judson and Patric Murray, the alleged "executive officers" of the corporation, were released.  Because the Estate seeks to recover under the policy based on a judgment entered against Judson Construction, Inc. only and not the individual defendants, it is irrelevant whether Judson and/or Murray fall within the "executive officers" exclusion and therefore are not "insureds" under the policy.

Thus, the defendants are entitled to summary judgment on the Second Count of the Complaint.

**C.   Third Count of National Grange's Complaint**

The defendants argue that they are entitled to summary judgment on the Third Count of the Complaint, which alleges that the occurrence involving Slater falls within a policy exclusion for "expected or intended" bodily injury.  National Grange contends that a genuine issue of material fact exists as to whether "the Judson [D]efendants could have reasonably expected

-26-

the resulting injury and death to Crystal Slater from their conduct."  (Pls.' Obj. Mot. Summ. J. 23, Doc. No. 97.)

The question of whether bodily injury under a policy was expected or intended "generally asks merely whether the injury was accidental."  Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1215 (2d Cir. 1995).  In Stonewall, the Second Circuit considered an argument by insurers that, rather than applying a subjective standard to determine whether a loss was "expected or intended", the trial court should have excluded coverage even for injuries that "should have" been expected. Id. at 1205.  The court rejected this argument, noting that "the policies on their face preclude coverage only if NGC expected or intended the injuries, and not if NGC merely should have expected injury.  Moreover, as we noted in City of Johnstown, ordinary negligence does not constitute an intention to cause damage."  Id. (citing City of Johnstown v. Bankers Standard Ins. Co., 877 F.2d 1146, 1150 (2d Cir. 1989)).

The relevant exclusion in the 2007 Policy reads:

This insurance does not apply to:

a.  Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

-27-

(Defs.' 56(a)(1), Ex. 19, NG-28.)  As in <u>Stonewall</u>, this exclusion on its face precludes coverage only for bodily injury that is expected or intended from the standpoint of the insured, not that which should have been expected, and there is not even a suggestion in the record that Slater's fall was not accidental.

Thus, the defendants are entitled to summary judgment on the Third Count of the Complaint.

**D.  The Estate's Counterclaim**

The Estate argues that if it prevails on any of its principal arguments in support of its motion for summary judgment, i.e., that National Grange is precluded from rescinding the policy and from arguing that it has no duty to indemnify because of a material misrepresentation, then it is entitled to judgment as a matter of law on each count of the Counterclaim.  The court agrees as to the First and Second Counts.

**1.  First and Second Counts**

As to the First Count, there is no genuine issue of material fact as to National Grange's liability to the Estate or as to whether National Grange has refused to make payment to the Estate.  Also, as to the Second Count, there is no genuine issue of material fact as to whether the judgment in the underlying wrongful death action has not been satisfied, as to the Estate's

status as a subrogee, or as to whether National Grange has refused to make payment to the Estate.  As to both counts, the issue in dispute between the parties is whether National Grange can assert as a defense a material misrepresentation by the defendants and/or their agents, and the court's analysis with respect to the doctrine of promissory estoppel is dispositive on that issue.  As discussed above, there is no genuine issue as to the fact that National Grange unreasonably delayed raising the issue of a material misrepresentation and also no genuine issue as to the fact that the Estate was prejudiced as a result of that delay.

National Grange argues that it has not had an opportunity to conduct discovery as to its defense of material misrepresentation.  However, National Grange is barred by the doctrine of promissory estoppel from asserting the defense of material misrepresentation by its own conduct, which is evidenced by its own documents, not by any conduct on the part of the Judson Defendants or the Estate.

Thus, the Estate is entitled to summary judgment on the First Count and the Second Count of the Counterclaim.

### 2. Third and Fourth Counts

The defendants' papers in support of their motion for summary judgment contain no independent discussion of the claim in the Third Count, i.e, the claim for breach of the covenant of

-29-

good faith and fair dealing, not even a statement of the
elements of the claim.  Likewise, there is no independent
discussion of the claim in the Fourth Count, i.e., the claim for
declaration of liability under New York Insurance Law §
3420(a)(2) and post-judgment interest under New York Civil
Practice Law & Rules § 5004.  Nor is the court's analysis of any
other issue necessarily dispositive of the claim in either Count
Three or Count Four.  As noted above, "the moving party bears
the initial burden of establishing that there are no genuine
issues of material fact," Weinstock, 224 F.3d at 41.  Also, it
must show that the facts as to which there is no such issue
warrant judgment for the moving party as a matter of law.  See
Fed. R. Civ. P. 56(a).  Here, the defendants have failed to meet
this initial burden with respect to the Third Count and the
Fourth Count.

Thus, their motion for summary judgment is being denied as
to the Third and Fourth Counts of the Counterclaim.

**IV.  Conclusion**

For the reasons set forth above, the Motion for Summary
Judgment (Doc. No. 105), filed by National Grange Mutual
Insurance Co., is hereby DENIED.  In addition, the Motion for
Summary Judgment (Doc. No. 89), filed by defendants Judson
Construction, Inc., Nathan Judson and Patric Murray and

defendant/counterclaim plaintiff The Estate of Crystal Slater, is hereby GRANTED in part and DENIED in part.

Judgment shall enter in favor of the defendants with respect to all counts of the Complaint and shall enter in favor of the Estate with respect to the First Count and Second Count of the Counterclaim.

The sole remaining claims in this case are the Third Count and the Fourth Count of the Counterclaim.

It is so ordered.

Signed this 21st day of March, 2013 at Hartford, Connecticut.

```
                    _____/s/_____
                       Alvin W. Thompson
                    United States District Judge
```